UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Paul Wigoda,                                    Case No. 19-22567-AJC

          Debtor.                               Chapter 11

_____/

## DEBTOR'S *EXPEDITED* MOTION TO SELL FT. LAUDERDALE PROPERTY

**\*Expedited Hearing Requested\***

**In accordance with the amended plan of reorganization and confirmation order, the Debtor is currently under private contract to sell real property located 2600 NE 30th Street, Ft. Lauderdale, Florida 33306 for the purchase price of $738,176.99 in cash after closing credits to non-insider Opendoor Property Acquisition LLC and/or its nominee. The contract provides for a closing date of <u>Friday, August 6, 2021</u>. Accordingly, the Debtor requests that the Court schedule this matter on an expedited basis <u>on or before Thursday, August 5, 2021</u>.**

### Local Rule 6004-1(B) Concise Statement:

(1) Purchaser: Opendoor Property Acquisition LLC and/or its nominee, which is not an insider of, or affiliated to, the Debtor or his corporate entities.

(2) Terms: The contract provides for (i) the sale of real property located at 2600 NE 30th Street, Ft. Lauderdale, Florida 33306 for the purchase price of $769,600 in cash with closing credits totaling $30,273.01 for service charges and credit in lieu of repairs, and (ii) a closing date of Friday, August 6, 2021.

(3) Private Sale: Not subject to higher and better offers.

(4) Competing Bidders: Not applicable.

(5) Additional Purchaser Protection: Not applicable.

(6) Transfer of Personal Identifiable Information: Not applicable.

(7) Lienholders: JPMorgan Chase Bank, N.A. is the only lienholder and holds an undisputed claim in the approximate amount of $452,288.70 plus post-petition arrearages secured by the Ft. Lauderdale Property. *See* Proof of Claim No. 7. The Debtor classified and treated this secured claim in Class 4 of the Confirmed Plan.

(8) Emergency Basis:  Because the contract provides for a closing date of Friday, August 6, 2021, the Debtor requests that the Court schedule this matter on an expedited basis on or before Thursday, February 5, 2021.

Reorganized Debtor, Paul Wigoda (the "Debtor"), pursuant to 11 U.S.C. §§ 363(b)(1), Fed. R. Bankr. P. 6004, Local Rule 6004-1, and the terms of the Confirmed Plan and Confirmation Order (defined below), requests that the Court authorize the Debtor to sell real property located 2600 NE 30th Street, Ft. Lauderdale, Florida 33306 (the "Ft. Lauderdale Property") to Opendoor Property Acquisition LLC and/or its nominee (the "Buyer").  In support, the Debtor states as follows:

## BACKGROUND

1.      On September 20, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code").

2.      The Debtor and his non-debtor spouse, Ruthy Wigoda, jointly own 50% of the Ft. Lauderdale Property.  *See* Schedule A/B, No. 1.2, ECF No. 30.  Non-insider, Beth Nielsen, is the other 50% owner of the Ft. Lauderdale Property.

3.      JPMorgan Chase Bank, N.A. ("JPMC") holds an allowed claim in the approximate amount of $452,288.70 plus post-petition arrearages secured by the Ft. Lauderdale Property.  *See* Proof of Claim No. 7.  Upon information and belief and without prejudice, the Debtor believes JPMC's claim may now exceed the proof of claim figure in light of post-petition arrearages.

4.      No other liens exist against the Ft. Lauderdale Property.

5.      On February 16, 2021, the Court entered the *Order Confirming Debtor's Amended Chapter 11 Plan of Reorganization* [ECF No. 339] (the "Confirmation Order"), which confirmed the *Debtor's Amended Plan of Reorganization* [ECF No. 243] (the "Confirmed Plan").

2

6.      Under sections 2.03(a)(ii) and 5.04 of the Confirmed Plan, the Debtor proposed certain procedures for the liquidation of the Ft. Lauderdale Property pursuant to sections 363 and 1123(a)(5) of the Bankruptcy Code.

7.      Specifically, section 5.04 of the Confirmed Plan provides in pertinent part:

In the event that the Debtor obtains a binding contract for sale of the Ft. Lauderdale Property via a private transaction on or before the expiration of six (6) months following the Effective Date, consistent with Section 2.03(a)(ii) of the Plan, the holder of the Class 4 JPMorgan Chase Secured Claim shall, in full satisfaction, settlement, release, extinguishment and discharge of such Secured Claim, be paid in full from the private sale proceeds upon closing.

In the event that the Debtor is unsuccessful in obtaining a binding contract for sale of the Ft. Lauderdale Property via a private transaction on or before the expiration of six (6) months following the Effective Date, the Ft. Lauderdale Property shall be sold via the public Auction and Sale process described in Section 2.03(b) of the Plan. . . .

8.      On July 17, 2021, the Debtor, his non-debtor spouse, and the Buyer entered into the *"AS IS" Residential Contract for Sale and Purchase*, a partially executed copy of which is attached as **Exhibit A** (the "Contract"), for the private sale of the Ft. Lauderdale Property for the purchase price of $769,600 in cash, less closing credits totaling $30,273.01 for service charges and credit in lieu of repairs (the "Purchase Price").[1]

9.      The Contract provides for a closing date of Friday, August 6, 2021.

10.     The Buyer is not an insider of the Debtor or any of his corporate entities.

11.     The Contract was the product of an arm's-length private transaction.

### RELIEF REQUESTED

12.     The Debtor requests an order of the Court authorizing the Debtor to sell the Ft. Lauderdale Property to the Buyer pursuant to the Contract and in accordance with the terms of the Confirmed Plan and Confirmation Order.

---

[1] The Debtor will file a fully executed copy of the Contract upon receipt of same.

13.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  Courts have uniformly held that approval of a proposed sale under section 363(b) is appropriate upon a finding that the transaction represents the sound business judgment on the part of the debtor. *See, e.g., In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992).  Once the bankruptcy court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the sale price is fair and reasonable; (ii) the debtor in possession has provided the interested parties with adequate and reasonable notice; and (iii) the purchaser is proceeding in good faith. *See In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 147 (3d Cir. 1986).

14.     In exercising his business judgment, the Debtor submits that the sale of the Ft. Lauderdale Property is in the best interests of the estate.  The Purchase Price of $738,176.99 in cash after closing credits is more than sufficient to satisfy in full the secured claim held by JPMC and to satisfy the Debtor's obligations under the Confirmed Plan and Confirmation Order.  The Debtor submits that the Purchase Price is fair and reasonable given the facts that the Debtor has been marketing the Ft. Lauderdale Property for months without a legitimate, realistic offer and that the Debtor scheduled the Ft. Lauderdale Property as having a value of only $550,000. *See* Schedule A/B, No. 1.2, ECF No. 30.  Further, in the event the Court disapproves the pending sale and the Debtor is unsuccessful in timely obtaining a new binding contract for private sale, the Ft. Lauderdale Property will be sold via the public auction procedures set forth in the Confirmed Plan.  A public auction of the Ft. Lauderdale Property will undoubtedly result in a purchase price much less than the current Purchase Price as well as require the Debtor to incur significant attorneys'

and costs, all to the detriment of JPMC and the Debtor's other general unsecured creditors. Accordingly, the Purchase Price is fair and reasonable.

15.     The Debtor submits that, in addition to this motion, interested parties (namely, JPMC) have received adequate and reasonable notice.  Indeed, prior to filing the Confirmed Plan, the Debtor negotiated the terms of the Confirmed Plan with JPMC, and JPMC voted in favor of the Confirmed Plan.  *See* Accepting Ballot, ECF No. 294.  Given that JPMC has accepted the terms of the Confirmed Plan and that the Purchase Price will satisfy in full JPMC's secured claim, the Debtor does not anticipate that JPMC will object to the relief requested herein.  Further, given that JPMC's secured claim will be satisfied in full, JPMC will not be entitled to a deficiency claim in Class 9 of the Confirmed Plan, which will result in a greater pro rata distribution to the Debtor's other general unsecured creditors.

16.     Finally, the Buyer is proceeding in good faith, as the Buyer is unrelated to the Debtor and his corporate entities, and the Contract is the result of an arm's length transaction.

## Request to Shorten Rule 2002(a) Notice Period

17.     Pursuant to Fed. R. Bankr. P. 2002(a), the Debtors must provide at least 21 days' notice by mail to all parties in interest of the proposed sale of the Ft. Lauderdale Property. However, pursuant to Fed. R. Bankr. P. 9006(c), the Court may shorten the notice period "for cause shown."

18.     The Debtor submits cause exists to shorten the notice period, as the Contract provides for a closing date of Friday, August 6, 2021 and the sale procedures set forth in the Confirmed Plan have been disclosed to, and accepted by, parties in interest (namely, JPMC) months prior to the entry of the Confirmation Order.  The shortening of the notice period will not harm or prejudice JPMC, as the Purchase Price is sufficient to satisfy in full JPMC's secured claim.

19.     Accordingly, the Debtor requests the Court to briefly shorten the notice period of the proposed sale of the Ft. Lauderdale Property to the date of the hearing on this motion.

### Request to Waive Rule 6004(h) Stay of Order

20.     Because the Contract provides for a closing date of Friday, August 6, 2021, the Debtor requests that the 14-day stay of the effectiveness of an order granting this motion be waived pursuant to Fed. R. Bankr. P. 6004(h).

### CONCLUSION

**WHEREFORE**, the Debtor respectfully requests an order of the Court: (i) granting this motion; (ii) authorizing the Debtor to sell the Ft. Lauderdale Property to the Buyer pursuant to the Contract and in accordance with the terms of the Confirmed Plan; (iii) shortening the Rule 2002(a) notice period to consider the relief requested herein; (iv) waiving the Rule 6004(h) fourteen-day stay of the order authorizing the sale; and (v) granting such other relief as the Court deems appropriate.

Respectfully Submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for Debtor
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: jlanphear@slp.law

By:   _/s/ Bradley S. Shraiberg_
        Bradley S. Shraiberg
        Florida Bar No. 121622
        Joshua B. Lanphear
        Florida Bar No. 125421

**ATTORNEY CERTIFICATION**

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this 20th day of July 2021.

 _/s/ Bradley S. Shraiberg_

# EXHIBIT A

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

To:     Paul Wigoda, Ruthy Wigoda                    Property: 2800 NE 30th St, Fort Lauderdale, FL 33306

From:   Opendoor Labs Inc.                           Date:  07/16/2021

This is to give you notice that Opendoor Labs Inc. ("Opendoor") has a business relationship with Opendoor Home Loans LLC, Digital Opendoor Insurance Services LLC d/b/a Opendoor Insurance ("Opendoor Insurance"), Opendoor Brokerage LLC, Opendoor Brokerage Inc., Open Listings Co., OS National LLC, OSN Texas, LLC, and North American Title Company ("NATC") (collectively, the "Affiliates"). Specifically, Opendoor wholly owns or is the ultimate owner of Opendoor Home Loans LLC, Opendoor Insurance, Opendoor Brokerage LLC, Opendoor Brokerage Inc., Open Listings Co., OS National LLC, and OSN Texas, LLC. Additionally, a member of Opendoor's board of directors is also a member of Lennar Corporation's board of directors, and Lennar Corporation has an indirect ownership interest in NATC's parent company. Because of these relationships, this referral may provide Opendoor a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the Affiliates as a condition for the purchase, sale, or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

**Opendoor Home Loans LLC**
Discount Points Fee

**Charge or Range of Charges**
0 - 4% of the loan amount*

**Opendoor Brokerage LLC**
Real Estate Commission

**Charge or Range of Charges**
0 - 6% of purchase price

**Opendoor Brokerage Inc.**
Real Estate Commission

**Charge or Range of Charges**
0 - 6% of purchase price

**OD Homes Brokerage Inc.**
Real Estate Commission

**Charge or Range of Charges**
0 - 6% of purchase price

**Digital Opendoor Insurance Services LLC**
Homeowners Insurance Policy Premium

**Charge or Range of Charges**
$200 - $29,000**

**OS National LLC**
Owner Title Policy Premium
Lender Title Policy Premium
Other Endorsements
Escrow/Closing Services
Loan Closing Services

**Charge or Range of Charges**
$0 - $4,000
$0 - $2,500
$0 - $1,000 per endorsement
$0 - $1,200
$0 - $350

Ver. 2/17/2021

**OSN Texas, LLC**
Owner Title Policy Premium
Lender Title Policy Premium
Other Endorsements
Escrow/Closing Services

**Charge or Range of Charges**
$0 - $5,000
$0 - $5,000
$0 - $500 per endorsement
$0 - $1,000

**North American Title Company**
Owner Title Policy Premium
Lender Title Policy Premium
Other Endorsements
Escrow/Closing Services

**Charge or Range of Charges**
$0 - $5,115
$0 - $5,000
$0 - $500 per endorsement
$0 - $3,100

\*Opendoor Home Loans LLC does not charge any application, origination, or processing fees. If you choose to buy down your interest rate, it will result in a discount points fee, which will vary depending on the rate you choose. \*\*Range calculated using average replacement costs that vary by state (ranging from $230,000 to $360,000). Actual premium amounts subject to property and policy specifications.

## ACKNOWLEDGMENT

I/we have read this disclosure form and understand that Opendoor is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

PAVL WIGoA
_____
Printed Name

_____
Signature

7|17|21
_____
Date

Wdy Wipdc
_____
Printed Name

_____
Signature

7 - 17 - 21
_____
Date

Ver 2/17/2021

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 FloridaRealtors®

1* **PARTIES:** Paul Wigoda, Ruthy Wigoda _____ ("Seller"),
2* and Opendoor Property Acquisition LLC and/or nominee _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):

6 **1. PROPERTY DESCRIPTION:**
7*     (a) Street address, city, zip: 2600 NE 30th St, Fort Lauderdale, FL 33306
8*     (b) Located in: Broward _____ County, Florida. Property Tax ID #: 494225044840
9*     (c) Real Property: The legal description is _____
10        CORAL RIDGE GALT ADD NO 1 31-37 B LOT 2 BLK 63

11
12        together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13        attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14        by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16        which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17        purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18        drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19        and other access devices, and storm shutters/panels ("Personal Property").
20*        Other Personal Property items included in this purchase are: Seller agrees to leave the following appliances
21        at no additional cost to the purchaser: Refrigerator that was present at the time of assessment
22        Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*     (e) The following items are excluded from the purchase: _____
24 _____

25                            **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency):..............................................................................$ 769,700

27*     (a) Initial deposit to be held in escrow in the amount of (**checks subject to COLLECTION**) ....... $ 1,250
28        The initial deposit made payable and delivered to "Escrow Agent" named below
29*        (**CHECK ONE**): (i) ☐ accompanies offer or (ii) ☑ is to be made within ____ (if left
30        blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31        OPTION (ii) SHALL BE DEEMED SELECTED.
32*        Escrow Agent Information: Name: OS National LLC, OS National LLC
33*        Address: 3097 Satellite Blvd, Suite 400, Duluth, GA 30096
34*        Phone: 678-282-6749 _____ E-mail: clientservices@osnational.com  Fax: 678-281-8895
35*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*        days after Effective Date ...........................................................................................$ 0
37        (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... NA

39*     (d) Other: ___See Opendoor Addendum_____ ............... $ 15,394
40     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*        transfer or other **COLLECTED** funds .......................................................................$ 753,056
42        **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*        July 21, 2021 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46        Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47        the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49        initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*     ("Closing") on August 6, 2021 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials __MM__              Page 1 of 12           Seller's Initials __PW__   __RW__
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Form
Simplicity

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☑ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

FINANCING

**8. FINANCING:**

☑ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or

(2) terminate this Contract.

Buyer's Initials _MM_       Page **2** of **12**       Seller's Initials _PW_ _RW_

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Form Simplicity

109        (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112 by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113        (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115 from all further obligations under this Contract.

116        (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118 default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119 have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120 of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121 Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122 Contract.

123*   ☐ (c) Assumption of existing mortgage (see rider for terms).
124*   ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125                       **CLOSING COSTS, FEES AND CHARGES**

126 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127     **(a) COSTS TO BE PAID BY SELLER:**

128 • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
129 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   • Recording and other fees needed to cure title
130 • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
131* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)   • Other:_____

132     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133     a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134     Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135     such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

136     **(b) COSTS TO BE PAID BY BUYER:**
137 • Taxes and recording fees on notes and mortgages        • Loan expenses
138 • Recording fees for deed and financing statements        • Appraisal fees
139 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)   • Buyer's Inspections
140 • Survey (and elevation certification, if required)          • Buyer's attorneys' fees
141 • Lender's title policy and endorsements             • All property related insurance
142 • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
143 • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9 (c)(iii) is checked.)
144* • Other:_____

145*     **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150 copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156 liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157     **(CHECK ONE):**
158*     ☑ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161 provider(s) as Buyer may select; or
162*     ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163 services related to Buyer's lender's policy, endorsements and loan closing; or

Buyer's Initials _MM_             Page **3** of **12**             Seller's Initials _PW_  _RW_

☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]**: Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☑ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments **(CHECK ONE):**

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☑ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed. If Seller identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial rating.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT**: If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY**: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

<h3 style="text-align:center">PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS</h3>

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**                               *See Opendoor Addendum

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___\*___ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

15. **DEFAULT:**
    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Buyer's Initials _MM_                              Page **6** of **12**                      Seller's Initials _Pv_   _RW_
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 009960-100161-8435463                                                                      Form
                                                                                                    Simplicity

this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

383  deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384  Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385  (b) electing to accept title with existing defects and close this Contract or Close (or if Closing Date has
386  passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387  electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388  further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
389  Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390  thereby releasing Buyer and Seller from all further obligations under this Contract.

391  **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392  encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393  governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394  such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395  than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396  Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397  prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398  preparation of such prior survey, to the extent the affirmations therein are true and correct.

399  **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400  the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

401  **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402  tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403  deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404  the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405  and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406  Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407  6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408  within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409  Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410  this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411  thereunder.

412  **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413  statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414  repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415  improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416  general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
417  names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418  for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419  paid or will be paid at Closing.

420  **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421  than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422  specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423  on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424  is located) of the next business day.

425  **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426  liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427  services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428  Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429  unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430  effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431  Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432  performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433  this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434  written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435  further obligations under this Contract.

436  **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437  personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438  described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

Buyer's Initials _MM_ _____ Page **8** of **12**     Seller's Initials _PV_ _RW_
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Form
Simplicity

439    transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440    Contract.
441    **I.    CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442    (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443    the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444    is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445    insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446    means.
447    (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448    sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449    owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450    receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451    the survey, flood elevation certification, and documents required by Buyer's lender.
452    (iii) **FinCEN GTO NOTICE.  If Closing Agent is required to comply with the U.S. Treasury Department's**
453    **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454    **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455    **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456    **report of said information to IRS.**
457    (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458    provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459    procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460    **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461    **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462    for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463    escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464    for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465    Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466    date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467    Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468    simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469    convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470    for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471    except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472    **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473    the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474    (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475    and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476    in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477    by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478    to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479    current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480    is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481    assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482    on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483    of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484    agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485    informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486    maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
487    estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488    shall survive Closing.
489    **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490    shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491    including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492    **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493    ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494    exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495    pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

Buyer's Initials _____MM_____                                    Page **9** of **12**                        Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Form
Simplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials _____MM_____                                       Page **10** of 12                         Seller's Initials __RW__ __RW__

Form Simplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

568 **ADDENDA AND ADDITIONAL TERMS**

569* **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☐ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☑ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ CC. Miami-Dade County Special Taxing District Disclosure |
| | | ☑ Other See Opendoor Addendum |

571* **20. ADDITIONAL TERMS:** Seller acknowledges that in the event there is/are (missing, open, expired) and/or
572 required permit(s) related to any system or component Seller agrees to the following:
573
574 1. For missing permit(s): Seller agrees to obtain permit(s), make necessary modifications and properly close all
575 outstanding permits which require permitting.
576
577 2. For any open or expired permit(s): Seller agrees to properly dispose of/close permit(s).
578
579 3. Seller shall provide written proof no less than 10 days prior to close of escrow, that permit(s) was/were
580 obtained and closed, or permit(s) was/were closed or voided.
581
582 4. If seller is unable to provide written proof required above, seller agrees to either amend this purchase
583 agreement by an amount not to exceed buyer's actual cost to obtain required permit(s) and replace the subject
584 component(s) or release Buyer from all obligations under this agreement and refund to Buyer all earnest money
585 deposits paid by, or on behalf of, Buyer.
586
587

588 **COUNTER-OFFER/REJECTION**

589* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591* ☐ Seller rejects Buyer's offer.

Buyer's Initials _MM_      Page **11** of **12**      Seller's Initials _PW_ _4RW_
FloridaRealtors/FloridaBar-ASIS-5x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Form Simplicity

592
593
**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595
596
597
598
*Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

599
600
AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

601*   Buyer: *Megan Meyer*   authorized signer on behalf of Opendoor Property Acquisition LLC and/or ~~nominee~~   Date: 07/16/2021

602*   Buyer: _____   Date: _____

603*   Seller: _____   Date: 7/17/2\
604*   Seller: _____   Date: 7 - 17 - 21

605   Buyer's address for purposes of notice
606*  Opendoor Property Acquisition LLC and/or nominee
607*  410 N Scottsdale Rd Suite 1600
608*  Tempe, AZ 85281

      Seller's address for purposes of notice
      _____
      _____
      _____

609
610
611
612
613
614
**BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to Cooperating Brokers.

615*  Allison Johnston
616   **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*  Opendoor Brokerage LLC
618   **Cooperating Broker, if any**                   **Listing Broker**

# Opendoor Addendum

This ADDENDUM ("Addendum") modifies the **"AS IS" Residential Contract For Sale and Purchase** (the "Contract") dated 07/16/2021 between Seller and Buyer (collectively, the "Parties") with respect to the real property commonly known as 2600 NE 30th St, Fort Lauderdale, FL 33306 (hereinafter, "Property"). Capitalized terms used but not defined in this Addendum have the meaning given to them in the Contract. In the event of any conflict with the terms in the Contract, the terms of this Addendum shall control to the full extent permitted by law.

## 1. SERVICE CHARGE CREDIT

Seller agrees to credit Buyer $ 15,394 for the Opendoor Service Charge at the Closing Date.

## 2. REPRESENTATION OF THE PARTIES AND COMPENSATION

Buyer is represented by Opendoor Brokerage LLC ("Opendoor Brokerage"), a subsidiary of Opendoor Labs Inc. and an affiliate of Buyer, in this transaction. Seller understands and agrees that Opendoor Brokerage has NO BROKERAGE RELATIONSHIP with the Seller.

Some of the employees of Buyer or its affiliates, including Buyer's authorized signer, may be licensed real estate agents, brokers, or salespeople in the State where the Property is located.

The Parties acknowledge that, if Seller is represented by an agent, compensation may be paid at closing between Opendoor Brokerage and Seller's agent.

## 3. DILIGENCE PERIOD

References in the Contract to "Inspection Period" are replaced with "Diligence Period."

Paragraph 12a is replaced with:

Buyer has visually assessed the Property. Buyer's period to conduct other types of diligence, including survey, easement, zoning, and Homeowners' Association diligence ("Diligence Period") will begin on the date this Addendum is executed by the Parties and end 10 days later.

## 4. CANCELLATION RIGHTS

Seller may cancel the Contract at any time prior to the Closing Date without penalty for any reason by providing written notice of cancellation to Buyer.

Buyer may cancel the Contract at any time prior to the Closing Date without penalty by providing written notice of cancellation to Seller under any of the following conditions:

(a) it is during the Diligence Period

(b) Seller is in default of any provision of the Contract

(c) the Property is marked Active on a MLS following the effective date of the Contract

(d) Seller does not have clear title to the Property

(e) the Property is not maintained in the same condition as it was when Buyer assessed it

(f) the Property is not delivered to Buyer free of tenants, occupants, and future tenancies

(g) If Seller is participating in the Opendoor Backed Offer Program, and Seller fails to purchase a home acquired on Seller's behalf under the program.



In the case of any cancellation provided for in this Section 4, the Buyer's Deposit will be disbursed immediately to Buyer with no further action required by Seller.

## 5. BUYER BREACH

If Buyer is in default of the Contract, Seller's only remedy is to cancel the Contract and receive the Buyer's Deposit as liquidated damages, thereby releasing both Parties from the Contract.

## 6. DISBURSEMENTS

The Parties agree to release Escrow Agent from any and all claims related to Buyer's Deposit disbursements authorized by the foregoing sections of this Addendum.

## 7. ASSIGNABILITY

Seller may not assign the Contract. Buyer may assign all of Buyer's rights and obligations under the Contract; however, any such assignment will not release Buyer of its obligations to Seller.

## 8. EXPIRATIONS

For any expiration date or deadline in the Contract that ends on a Saturday, Sunday, or state or national holiday, the date will be automatically extended to 5:00 p.m. the next business day.

_Megan Meyer_   07/16/2021
Buyer Signature        Date

authorized signer on behalf of Opendoor Property
Acquisition LLC and/or nominee

Seller Signature        Date    7/17/21

Seller Signature        Date    7-17-21



**Addendum to Contract**



Addendum No. 1_____ to the Contract with the Effective Date of 07/16/2021_____ between

Paul Wigoda, Ruthy Wigoda _____ (Seller)

and Opendoor Property Acquisition LLC and/or nominee _____ (Buyer)

concerning the property described as: 2600 NE 30th St, Fort Lauderdale, FL 33306 _____

_____

(the "Contract"). Seller and Buyer make the following terms and conditions part of the Contract:

In lieu of repairs, Seller agrees to credit Buyer $14,879.01 at closing, which shall be in addition to all other credits as set forth in the contract.

authorized signer on behalf of Opendoor
Buyer: *Megan Meyer* Property Acquisition LLC and/or nominee     Date: 2021-07-16 12:54:12 -0400 _____

Buyer: _____     Date: _____

Seller: _____     Date: 7/17/21 _____

Seller: _____     Date: 7-17-21 _____

ACSP-4    Rev 6/17
Serial#: 009578-300151-6308444

©2017 Florida Realtors®
formsimplicity